# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

GARY SHEPARD,

     Plaintiff

v.

DIRECTOR, NEVADA DEPARTMENT OF
CORRECTIONS, et al.,

     Defendants

Case No.: 3:19-cv-00579-RCJ-CSD

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF No. 40

This Report and Recommendation is made to the Honorable Robert C. Jones, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' motion for summary judgment. (ECF Nos. 40, 40-1 to 40-6, 46-1, 46-2.) Plaintiff filed a response. (ECF No. 54.) Defendants filed a reply. (ECF No. 58.) Plaintiff was given leave to file a supplemental response after he had an opportunity to review his relevant dental records, and Defendants were permitted to file a supplemental reply. (ECF No. 61.) Plaintiff filed a supplemental response. (ECF No. 64.)[1] No supplemental reply was filed by Defendants.

After a thorough review, it is recommended that Defendants' motion be granted in part and denied in part.

---

[1] In his supplemental response, Plaintiff argues that Defendants' motion should be denied because Defendants withheld his dental documents; however, the court specifically ordered that Plaintiff be allowed to review his relevant dental records prior to filing his supplemental response. He does not indicate he was unable to do so. The supplemental response also references Dzurenda, who was dismissed on screening, and Carrillo, who was dismissed without prejudice under Rule 4(m). The court will not address those arguments.

**I. BACKGROUND**

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 4.) The events giving rise to this action took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC). (*Id.*)

The court screened Plaintiff's complaint and allowed him to proceed with Eighth Amendment deliberate indifference to serious dental needs claims against defendants Calderon, Carrillo, Oliver, Howell, and Aranas. NDOC and James Dzurenda were dismissed. (ECF No. 3.) Defendant Carrillo was subsequently dismissed without prejudice under Federal Rule of Civil Procedure 4(m) for lack of timely service. (ECF No. 22.)

Insofar as the remaining Defendants are concerned, Plaintiff alleges in Count I that he continually requested treatment for painful dental conditions between his appointment with Dr. Calderon on February 8, 2017, to extract tooth 13, and June 6, 2017. At that time, he saw Dr. Calderon and claims he pointed to his problem teeth, but Dr. Calderon told Plaintiff to submit an inmate request (known as a "kite") to seek dental care for tooth 29 and to get an x-ray of the tooth. No treatment or care was provided at that appointment. Plaintiff avers that he continued to seek treatment for the pain caused by his decaying teeth, and when no treatment was provided as of August 19, 2017, he pulled out his own tooth.

In Count II, Plaintiff alleges that during a dental visit on April 8, 2016, Dr. Calderon told Plaintiff he had to choose which tooth he wished to extract: either a damaged tooth or an infected tooth. Plaintiff elected to remove the non-infected tooth, and received antibiotics for the infected tooth, and he was told he would have to wait ten days to have that tooth extracted. Plaintiff

2

claims the tooth was not extracted until months later. Plaintiff asserts that he contacted SDCC Assistant Warden and Warden Oliver and Howell regarding his pain and requested treatment to no avail.

Finally, in Count III, Plaintiff alleges that he made his first request to have his partial dentures fixed in February 2017, which he had lost in a drain in his cell. On June 16, 2017, he was seen by Dr. Calderon for an evaluation but no fitting was taken for his dentures. He filed a grievance, which was partially granted, but he was placed on another waiting list. He complained of pain due to the lack of teeth to chew his food. The response was to issue him a soft diet instead of prioritizing him for the denture fitting. Plaintiff claims that he sought assistance from Oliver, Howell, and Aranas, but he was still not seen for denture impressions.

Defendants move for summary judgment, arguing: (1) Plaintiff failed to exhaust his administrative remedies on his claims against Aranas, Howell and Oliver; (2) Plaintiff's claims in Counts I and II are barred by the statute of limitations; (3) Plaintiff's claims in Count I fail because of claim preclusion; (4) Aranas, Howell, and Oliver did not personally participate in any constitutional violation; (5) there is no evidence Defendants were deliberately indifferent to Plaintiff's dental needs; and (6) Defendants are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

**A. Exhaustion as to Aranas, Howell and Oliver**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his

5

1  administrative remedies irrespective of the forms of relief sought and offered through

2  administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

3      The failure to exhaust administrative remedies is "'an affirmative defense the defendant

4  must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v.*

5  *Bock*, 549 U.S. 199, 204, 216 (2007). "If undisputed evidence viewed in the light most favorable

6  to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under

7  Rule 56. If material facts are disputed, summary judgment should be denied, and the district

8  judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168,

9  1170-71 (citations omitted).

10     Once a defendant shows that the plaintiff did not exhaust available administrative

11  remedies, the burden shifts to the plaintiff  "to come forward with evidence showing that there is

12  something in his particular case that made the existing and generally available administrative

13  remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d

14  767, 778 n. 5 (9th Cir. 1996)); *Draper v. Rosario,* 836 F.3d 1072, 1080 (9th Cir. 2016) (inmate

15  plaintiff did not meet his burden when he failed to identify any actions prison staff took that

16  impeded his ability to exhaust his administrative remedies, or otherwise explain why he failed to

17  comply with the administrative remedies process)). The ultimate burden of proof, however,

18  remains with the defendant. *Id*.

19     To exhaust administrative procedures within NDOC, an inmate must comply with

20  NDOC's Administrative Regulation (AR) 740, which requires an inmate to complete three

21  grievance levels: informal, first, and second levels. (ECF No. 40-4.)

22     Defendants argue that Plaintiff filed grievance 2006-30-54743 on August 19, 2017, but it

23  makes no mention of Dr. Aranas, Warden Howell, or Assistant Warden Oliver or their alleged

1  deliberate indifference, and he did not file any other grievance after this alleging their deliberate

2  indifference.

3        Dr. Aranas' involvement was limited to responding to Plaintiff's second level grievance,

4  number 2006-30-54743, on March 12, 2018. (ECF No. 4 at 25.) Plaintiff alleges that he sent

5  kites to Oliver and Howell asking them to intervene to help him get dental care, to no avail.

6  Plaintiff attaches to his complaint the inmate requests he claims he sent to Howell and Oliver.

7  They range from March 25, 2018, until December 7, 2018. (ECF No. 4 at 45-50.)

8        The court agrees with Defendants that grievance 2006-30-54743 cannot serve to exhaust

9  administrative remedies as to Dr. Aranas, Warden Howell, or Assistant Warden Oliver when the

10  grievance pre-dates the conduct Plaintiff claims was unconstitutional. Plaintiff does not appear to

11  have filed a subsequent grievance asserting that he sought intervention for the alleged denial of

12  medical care through kites and grievances, to no avail. Nor does Plaintiff provide evidence that

13  the grievance process was unavailable to him. Therefore, the motion for summary judgment

14  should be granted as to the claims against Dr. Aranas, Oliver, and Howell. *See Bumpus v.*

15  *Nangalama*, No. 2:12-cv-1102 TLN DB P, 2018 WL 4063506, at *13 (E.D. Cal. Aug. 27, 2018),

16  (finding inmate plaintiff failed to exhaust when conduct alleged to violate the constitutional post-

17  dated his grievance). The only remaining claims are those asserted against Dr. Calderon.

18  **B. Statute of Limitations**

19        Section 1983 does not contain its own statute of limitations; therefore, federal courts

20  borrow the statute of limitations for section 1983 claims applicable to personal injury claims in

21  the forum state. *See Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985); *Pouncil v. Tilton*, 704 F.3d

22  568, 573 (9th Cir. 2012). In Nevada, the statute of limitations for personal injury claims, and

23

1 therefore section 1983 actions brought here, is two years. Nev. Rev. Stat. 11.190(4)(e); *see also*

2 *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989).

3      "A statute of limitations begins to run on the date on which the plaintiff's claim

4 'accrues.'" *Pouncil*, 704 F.3d at 573 (citation omitted). "Federal law determines when a cause of

5 action for a Section 1983 claim accrues and, hence, when the statute of limitations begins to

6 run." *Id*. (citation omitted). Under federal law, a claim accrues "when the plaintiff knows or has

7 reason to know of the injury that is the basis of the action." *Id*. at 574 (citation omitted).

8      Federal courts apply the forum state's law regarding tolling, including equitable tolling,

9 when not inconsistent with federal law, to civil rights claims filed under section 1983. *Johnson v.*

10 *State of Cal.*, 207 F.3d 650, 653 (9th Cir. 2000) (citations omitted). The Ninth Circuit has held

11 that "the applicable statute of limitations must be tolled while a prisoner completes the

12 mandatory exhaustion process." *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005) (citations

13 omitted); *see also Soto v. Sweetman,* 882 F.3d 865 (9th Cir. 2018).

14      Plaintiff filed this action on September 18, 2019. (ECF Nos. 1, 1-1.) Defendants point out

15 that Plaintiff submitted his grievance on August 19, 2017, and it was resolved on March 12,

16 2018; therefore, the statute of limitations was tolled for roughly seven months.

17     **1. Count I**

18      The court need not consider the allegations of the period between 2014 and the beginning

19 of 2017 that pertain to Carrillo, who has been dismissed without prejudice. The allegations

20 concerning Dr. Calderon begin on February 8, 2017, when Plaintiff alleges he continued to

21 request treatment for various dental issues; however, it is unclear that he knew of the alleged

22 constitutional violations as of that date. Instead, he contends that he was denied treatment when

23 he saw Dr. Calderon on June 6, 2017, and then, when he still did not receive treatment as of

1 August 19, 2017, he claims he Plaintiff pulled his own tooth. If he knew of the constitutional

2 violation on either June 6, 2017 or August 19, 2017, or some time in between, taking into

3 account tolling, his complaint was timely filed with respect to this claim. Defendants' motion

4 should be denied insofar as they argue they are entitled to summary judgment based on the

5 statute of limitations as to the claim against Dr. Calderon in Count I.

6     **2. Count II**

7     In Count II, Plaintiff alleges that he saw Dr. Calderon on April 8, 2016, and was forced to

8 elect which tooth he wanted to extract, and when he chose to have the non-infected tooth

9 extracted, Dr. Calderon gave him a course of antibiotics for the infected tooth and said he would

10 then have that tooth extracted within 10 days. Plaintiff claims, however, that it was months

11 before the tooth was extracted. Plaintiff's dental records show that his next tooth extraction, of

12 tooth 19, took place on July 5, 2016. (ECF No. 46-1 at 5.)

13     Assuming his claim accrued on July 5, 2016 when the tooth was eventually extracted,

14 even accounting for 7 months of tolling, Plaintiff did not timely file his complaint with respect to

15 his claim against Dr. Calderon in Count II. Therefore, summary judgment should be granted in

16 Dr. Calderon's favor as to Count II.

17 **C. Claim Preclusion**

18     Defendants argue that Count I should be dismissed on the basis of claim preclusion

19 because Plaintiff raised a similar claim against Dr. Calderon (and Carrillo) in a case filed in state

20 court that was dismissed for failure to state a claim upon which relief may be granted.

21     "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,

22 which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 552 U.S. 880, 892 (2008).

23

"[C]laim preclusion (sometimes itself called res judicata) … prevents parties from raising issues that could have been raised and decided in a prior action—even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashion Group, Inc.*, 140 S.Ct. 1589, 1594 (2020). "If a later suit advances the same claim as an earlier suit between the same parties, the earlier suit's judgment 'prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* (quoting *Brown v. Felson*, 442 U.S. 127, 131 (1979), other citations omitted).

"Claim preclusion requires '(1) an identity of claims, (2) a final judgment on the merits , and (3) privity between the parties.'" *Howard v. City of Coos Bay*, 871 F.3d 1032, 1038-38 (9th Cir. 2017) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003)).

On February 15, 2017, Plaintiff filed a civil rights complaint in the Eighth Judicial District Court for the State of Nevada, in Clark County against defendants Ben Gutierrez, Dr. Calderon, Sonya Carrillo, and the State of Nevada. He asserted, among other things, a violation of the Eighth Amendment under 42 U.S.C. § 1983. Insofar as is relevant here, Plaintiff alleged in the state court action that he saw Dr. Calderon on April 8, 2016, some six months after he had submitted his first request for dental care for the pain caused by two bad teeth. At that visit, he claimed Dr. Calderon told him he had to choose between which of the two bad teeth would be pulled, and he would have to submit another request to receive treatment for the second tooth even though he had already requested treatment for the teeth. Dr. Calderon extracted one of the teeth. Eight weeks passed, and Plaintiff was not seen for the other tooth. (ECF No. 40-1 at 2-8.)

The state court granted the Defendants' motion to dismiss for failure to state a claim upon which relief may be granted, finding, among other things, that Plaintiff failed to state an Eighth Amendment claim against Dr. Calderon. (ECF No. 40-1 at 11-17.) Plaintiff appealed and the Nevada Court of Appeals affirmed the order granting the motion to dismiss. (ECF No. 40-1.)

Plaintiff's state court action contains allegations are duplicative of those asserted in *Count II* of this action, but not *Count I*. Defendants do not include an argument in their motion that Count II is barred by claim preclusion, and the court has already recommended dismissal of Count II on statute of limitations grounds. Moreover, Defendants have not provided evidence that the dismissal of the Eighth Amendment claim against Dr. Calderon was with prejudice.

In sum, Defendants have not demonstrated an identity of claims between the state court action and the claims asserted in Count I of this action. Nor have Defendants met their burden of demonstrating that Count II is subject to claim preclusion.

Therefore, Defendants' motion should be denied insofar as they argue Plaintiff's claims are barred by the doctrine of claim preclusion. The court will now address the merits of Plaintiff's Eighth Amendment claims in Counts I and III against Dr. Calderon.

**D. Eighth Amendment Deliberate Indifference- Counts I and III vs Dr. Calderon**

**1. Eighth Amendment Standard**

"The government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and failure to meet that obligation can constitute an Eighth Amendment violation cognizable under § 1983." *Colwell v. Bannister,* 753 F.3d 1060, 1066 (9th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976)).

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need.

*Estelle*, 429 U.S. at 104. A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *rev'd on other grounds, WMX Tech, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104). If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted).

///

///

### 2. Count I

According to Dr. Calderon, on June 16, 2017, Plaintiff presented regarding his request for repair of his broken partial, that he then claimed he lost down the shower drain in February. He also said he had a cavity, which a visual exam confirmed at the distal tooth 28. Dr. Calderon claims that was mistakenly originally noted as tooth 29. Plaintiff was told to submit a kite for an x-ray and treatment of that tooth. Dr. Calderon asserts that Plaintiff was asked if he already submitted a kite regarding that issue, and he said no. (Calderon Decl., ECF No. 46-2 ¶ 11.)

Dr. Calderon asserts he saw Plaintiff again on October 17, 2017, and he saw no clinical evidence of Plaintiff pulling his own tooth before August 18, 2017. (*Id*. ¶ 14.) At that time, Dr. Calderon completed a filling on tooth 28. The records also noted his present teeth as numbers 2, 3, 5, 9, 11, 12, 18, 20-22, 28 and 32. (*Id*. ¶ 15.)

The records from June 16, 2017, state that when Plaintiff was seen in response to his kite about a broken partial, he pointed to his bicuspid area and said he had a cavity. A visual exam showed distal decay of tooth 29. Plaintiff was advised to submit a kite for treatment of tooth 29. When asked if he had already submitted a kite on this issue, Plaintiff said no. (ECF No. 46-1 at 4.)

On June 26, 2017, Plaintiff sent a kite advising he had another tooth on the bottom that may need to be extracted before his denture impressions were made. He said that he asked the dentist to see if the tooth needed to be extracted at his last visit, and the dentist told him it looked like it had a cavity, but it was not extracted at that visit. (ECF No. 4 at 37.)

On August 19, 2017, Plaintiff filed a kite stating that on June 26, 2017, he had put in his third request regarding a request to have a tooth removed that had been causing him for five

months. He said that due to excruciating pain, he could not wait nine weeks to be seen and pulled his own tooth. He claimed he was without sufficient teeth to eat properly. (ECF No. 4 at 28.)

On August 19, 2017, Plaintiff also filed an informal level grievance asserting that due to suffering in unbearable pain for five months, and his requests for assistance being ignored, he was forced to remove his own tooth (and mailed it to his lawyer for safekeeping). (ECF No. 4 at 20.) The informal level grievance response references tooth 29, and it confirms the tooth had clinical decay. The response states that Plaintiff was advised to submit a kite on June 26, 2017, but he would be scheduled in a few weeks to evaluate the area where Plaintiff claimed to have removed his own tooth. (*Id*. at 19.)

In his first level grievance, Plaintiff said that at his June 6, 2017 appointment, Plaintiff told the dentist about the tooth that had been causing him pain for over five months, and the dentist looked at it and said it appeared to have a cavity. Plaintiff stated: "It wasn't # 29 it was the tooth behind #29 that I remove[d] because I couldn't take the pain." (*Id*. at 23.) He claimed that on October 17, 2017, the dentist found another tooth with a cavity—tooth 29—, that he fixed. Plaintiff said the dentist was trying to claim that was the tooth he saw (tooth 29) at the June 6, 2017 visit. (*Id*. at 23-24.)

The first level response states that Plaintiff had a dental appointment on October 17, 2017, to evaluate his lower right bicuspid, and an examination verified the teeth present in his mouth. The last bicuspid before the wisdom tooth is tooth 28 and not tooth 29, as previously referred to in a kite. An x-ray confirmed there was a cavity on tooth 29, and a filling was placed at that appointment. (*Id*. at 22.)

Plaintiff was seen on October 17, 2017 for evaluation of the lower right bicuspid area. An exam showed buccal swelling. It notes it was tooth 28 and not 29, and it had decay and a cavity.

He was given treatment for this tooth. The notes indicate the teeth present at the visit as 2, 3, 5, 9, 11, 12, 18, 20-22, 28, and 32. (ECF No. 46-1 at 4.)

There is no dispute that Dr. Calderon noted Plaintiff had a cavity in his lower bicuspid tooth at his appointment on June 16, 2017, and that Dr. Calderon told him to submit a kite for treatment of that tooth. There is also no dispute that Plaintiff sent a kite on June 26, 2017, advising that he thought he needed another tooth extracted before he could have his denture impressions made, and that Dr. Calderon had told him this at his prior appointment. There does not appear to have been a response to this kite. Plaintiff then said on August 19, 2017, that he could not wait any longer and he pulled his own tooth, and he was without sufficient teeth to eat properly. The response to Plaintiff's informal grievance references tooth 29, and confirms it had decay. In his first level grievance, Plaintiff said it was the tooth behind tooth 29 (tooth 28) that he removed it because he couldn't take the pain. He maintained that it was tooth 29 that Dr. Calderon fixed at the October 17, 2017, appointment.

The parties dispute whether Plaintiff removed his own tooth (tooth 28) in August 2017, and whether Plaintiff still had that tooth when he saw Dr. Calderon again on October 17, 2017. A fact finder believing Plaintiff's version of events could conclude that there was an unreasonable delay in extracting Plaintiff's tooth. Defendants argue there is no evidence that a lack of treatment led to further pain or injury. "[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth amendment violation," however, where an inmate alleges that prison officials are aware that the delay was causing pain and resulting in damage to teeth, he states an Eighth Amendment claim. *Id*. (citing *Fields v. Gander*, 734 F.2d 1313, 1315 (8th Cir. 1984) (plaintiff claimed jail knew of pain from infected tooth but refused to provide care for up to three weeks)). Plaintiff advised Dr. Calderon at his initial June 2017 appointment

that the tooth was causing him pain, and Dr. Calderon agreed that it required treatment. Plaintiff

further asserts that as a result of his continuing pain, he was forced to extract his own tooth.

Plaintiff has created a genuine dispute of material fact as to whether he suffered harm due to the

delay in extracting his tooth. *See Hunt*, 865 F.2d at 201 (reversed grant of summary judgment

where there was a delay of more than three months of untreated pain before inmate received

treatment for dental issue).

Defendants also argue that there is no evidence of deliberate indifference because

Plaintiff had numerous appointments with Dr. Calderon. The fact that Plaintiff was seen, and

even the fact that he was seen numerous times does not, in and of itself, demonstrate a lack of

deliberate indifference. *See Edmo v. Corizon*, 935 F.3d 757, 793 (9th Cir. 2019) (citation

omitted) ("The provision of some medical treatment, even extensive treatment over a period of

years, does not immunize officials from the Eighth Amendment's requirements."). It is

Defendants' burden to demonstrate the absence of a genuine dispute of material fact. Merely

concluding Plaintiff's treatment was adequate because he was seen multiple times is insufficient.

For these reasons, Dr. Calderon's motion should be denied as to the Eighth Amendment

claim in Count I.

**3. Count III**

According to Dr. Calderon, he saw Plaintiff on June 16, 2017, in response to a kite

Plaintiff sent to repair his broken partial. At the appointment, however, Plaintiff was asked for

the broken partial, and he said he lost it down the shower drain in February. Dr. Calderon

advised Plaintiff he would be placed on the partial denture list, and Plaintiff became angry when

he was told that impressions would not be taken that day. (Dr. Calderon Decl., ECF No. 46-2 ¶

11.) That same day, Dr. Calderon called the unit where Plaintiff was housed, and they did not

have a report of Plaintiff's claim that he lost his partial down the drain, and there were no

requests for maintenance to retrieve his partial from the drain. (*Id.* ¶ 12.)

Plaintiff was next seen on October 17, 2017, and a filling was completed for tooth 28. (*Id.* ¶ 28.) Plaintiff missed an appointment on March 16, 2018. (*Id.* ¶ 16.) On April 27, 2018, Plaintiff was seen for a chipped tooth. The crown broke off of tooth 18, and Dr. Calderon had to take it off completely. (*Id.* ¶ 17.) On November 8, 2018, there was a small chip in tooth 31. (*Id.* ¶ 18.) Preliminary impressions were made for Plaintiff's partial dentures on December 7, 2018. (*Id.* ¶ 19.)

Dr. Calderon states that the waitlist for partials places the inmate in line to start the five-step process, which can take years to complete. (*Id.* ¶¶ 7, 9.) Under NDOC's medical directives, an inmate must kite to have all restorative, preventive, and oral surgery procedures completed to start the five-step process. (*Id.* ¶ 8.)

The evidence demonstrates that on February 26, 2017, Plaintiff sent a kite stating that his partial broke and needed to be fixed and it needed to have teeth added. He was told that the dental schedule is based on priority needs, and he would be seen in approximately nine weeks, and he should kite for sick call if his condition worsened. (ECF No. 4 at 34.)

On April 15, 2017, he sent another kite asking to be fitted for his partials. Again, he was told he would be seen in approximately nine weeks, and to bring his existing partial to his next dental appointment. (*Id.* at 35.)

On June 16, 2017, Plaintiff was seen in response to his kite asking to repair his broken partial. When Plaintiff was asked for the broken partial, he said it was lost down the drain in February. It was noted he had several missing teeth. He was advised he would be placed on the partial denture list, and he became upset when he was advised impressions would not be taken

1   that day. He was told that other patients on the list would be treated in order before he would

2   receive treatment. (ECF No. 46-1 at 4.)

3           On June 26, 2017, Plaintiff sent a kite stating that he saw the dentist on June 15, 2017, to

4   have his impression made for his partial because his old bottom partial broke and went down the

5   drain, but the impression was not made because Plaintiff did not have the old partial and it would

6   not be fair to the other inmates. He was instructed to kite to have the partial made, and he

7   requested impressions be made. He said he needed to also see if another tooth on the bottom

8   needed to be extracted before the impressions were made. Plaintiff was told that he would be

9   seen in approximately nine weeks. (*Id*. at 36-38.)

10          On August 19, 2017, Plaintiff sent a kite stating that on June 26, 2017, he sent a request

11  to have impressions made for his partial dentures. He said he had pulled his own tooth after he

12  did not receive treatment, and was without sufficient teeth to eat properly, and was in desperate

13  need of his partials. In response, he was told to continue to look for his name on the call out list.

14  He was advised to re-kite if he had other dental concerns or if he would like a soft diet in the

15  meantime. (ECF No. 4 at 28.)

16          On August 19, 2017, Plaintiff also filed an informal level grievance asking to be seen by

17  dental to be fitted for his partial dentures. (ECF No. 4 at 21.) The informal level grievance

18  response partially granted the grievance to the extent Plaintiff was placed on the waitlist to be

19  fitted for partial dentures. He was advised that appointment wait times are based on priority, the

20  number of kites received, and the structure of the dental department. (*Id*. at 19.) In his first level

21  grievance, he said he submitted his first request to have his bottom partial fixed/replaced on

22  February 26, 2017, but he was not seen until June 6, 2017. When he explained that the partial

23  went down the drain, Plaintiff claimed the dentist got angry, and said no impression would be

taken that day because it wouldn't be fair to other inmates at SDCC. (*Id.* at 24.) The first level response advised Plaintiff he was on the partial denture list, and the impression would be obtained once the inmates ahead of Plaintiff were completed in order. (*Id.* at 22.)

Plaintiff filed his second level grievance on January 24, 2018, and he said he still had not had an appointment for the impression to be made. He asked how much longer he had to suffer in pain. (*Id.* at 26.)

A chart review was completed on February 9, 2018. (ECF No. 46-1 at 3.)

Plaintiff did not show up to his appointment on March 16, 2018. (ECF No. 46-1 at 3.)

On March 24, 2018, Plaintiff sent a request stating that he put in his first request to be fitted for a partial in February 2017, and his grievance on the issue was partially upheld in June 2017, but he had still not been fitted for the partial. In response, Plaintiff was advised that the dental schedule is based on priority of needs and he would be seen in approximately nine weeks, and to kite for sick call if his condition worsened. (ECF No. 4 at 42.)

In response to a kite sent to Oliver on March 25, 2018, Dr. Calderon responded that Plaintiff was within 6 patients from starting the impressions. (ECF No. 4 at 45, 52; ECF No. 40-2 at 2-3.)

Plaintiff was seen on April 27, 2018, regarding a chipped tooth that was causing him pain when hit with hot or cold, pointing to a lower left molar. It appears he received treatment for this tooth, but there was no mention regarding his partial impressions. (ECF No. 46-1 at 3.)

On October 14, 2018, in response to a kite about his partial, he was told to check the call out list and that it should be within two weeks. (*Id.* at 48.)

On November 8, 2018, he was seen for a chip in tooth 31, and it appears he received treatment for this tooth. (*Id.*)

Plaintiff had his preliminary impressions for his dentures on December 7, 2018. (ECF No. 46-1 at 3.)

His next appointment was on May 3, 2019, where it was noted he had multiple missing teeth. The notes appear to state that he was ready for the next step with respect to his partials. (*Id.*) On June 6, 2019, it was noted that the prosthesis was in progress. (*Id.*)

On September 3, 2019, Plaintiff was given instructions on how to clean his dentures. (ECF No. 46-1 at 2.)

It was nearly a year and a half from the time Plaintiff was placed on the waitlist for partial denture fitting on June 16, 2017, and when he had his impressions taken on December 7, 2018. It does not appear that Plaintiff received his dentures until sometime late in 2019. In the interim, Plaintiff continued to kite about having his impressions made and in some of his kites and grievances he asserted he was suffering in pain and had difficulty eating due to having insufficient teeth. While Dr. Calderon asserts that Plaintiff had to have all other treatment done prior to having his impressions done, this was not conveyed to Plaintiff in response to his numerous kites requesting the impressions. As with Count I, a fact finder could conclude that the year and a half delay in providing Plaintiff with the denture impressions was unreasonable and that Dr. Calderon knew Plaintiff was suffering in pain and experiencing difficulty eating due to his lack of teeth. It is unclear what additional treatment Plaintiff required before his denture impressions could be taken. If this is established at trial, a fact finder could conclude that the delay in taking the impressions, coupled with the fact that other inmates were ahead of Plaintiff on the waitlist, was entirely reasonable. This is not a determination to be made at summary judgment, but is reserved for trial. Therefore, Dr. Calderon's motion should be denied as to Count III.

**E. Qualified Immunity**

"In evaluating a grant of qualified immunity, a court considers whether (1) the state actor's conduct violated a constitutional right and (2) the right was clearly established at the time of the alleged misconduct." *Gordon v. County of Orange*, 6 F.4th 961, 967-68 (9th Cir. 2021) (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)).

"Dental care is one of the most important medical needs of inmates." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). "[T]he [E]ighth [A]mendment requires that prisoners be provided with a system of ready access to adequate dental care." *Id*. (citing *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)).It was clearly established in *Hunt* that a delay in providing dental care in the face of untreated pain can amount to deliberate indifference. *Hunt*, 865 F.2d at 200-01. Therefore, Dr. Calderon is not entitled to qualified immunity.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' motion (ECF No. 40) as follows:

The motion should be **GRANTED** as to (1) the claims against Dr. Aranas, Oliver and Howell; and (2) the claims against Dr. Calderon in Count II.

The motion should be **DENIED** as to the claims against Dr. Calderon in Counts I and III.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's

Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 12, 2023

_____
Craig S. Denney
United States Magistrate Judge